Good morning, everyone. Let me begin by expressing the thanks of the judges of the Third Circuit, in particular the thanks of Judges McKee, Rickett, and myself for the assistance and trust by the District Court of the Virgin Islands for this sitting. It was very important to this panel that this sitting not in any way be interrupted or impacted adversely by the unfortunate natural disasters that have been visited upon the islands. And knowing that all of you in the court system, from our point of view, of interest to us, are still recovering, it is no small matter for the District Court here to provide us with the assistance and undertake some work that they wouldn't have to do otherwise at the time that they've got other things to do. So again, on behalf of the Third Circuit, I want to express our thanks to Chief Judge Lewis, to Wendell Lake, and to all in the system for their assistance to us. Judge Sirica, are you on the phone and can hear us? I can hear you very well. Can you hear me? We can. Thank you very much. Thank you. The first matter listed for oral argument this morning is United States of America v. Wayne J. James. Mr. Hurson? May it please the Court, good morning and welcome back to the Virgin Islands. My name is Brendan Hurson and I represent Appellant Wayne James. I'd like to reserve the Court's permission three minutes for rebuttal. The District Court in this case erred in failing to recognize that informal fact-finding of the kind engaged in by then-Senator Wayne James is protected under the speech or debate immunity provision of the revised Organic Act. Well, let me turn that around if I may. You say informal actions on the part of the legislator, but reading the term of art is legislative acts, is it not? I mean, that's the language that I know we have used. So the question that this panel needs to ask is, which of Mr. James' actions here specifically were legislative acts that are worthy of protection under Section 1572B? And again, keep Brewster in mind as you respond to that question. Brewster is a Supreme Court's limitation that they announced that Brewster got vastly something more than what I'm quoting here. Some nexus to the legislative function, there's no protection under the speech and debate clause. It really asks, quote, some nexus to the legislative functions, always only, quoting again, casually or incidentally related to legislative affairs. Here we have a situation where the only nexus seems to be the fact that he was in the legislature at the time that he submitted certain invoices, but some of the work that was done actually was done two years before he got there, and some of the reimbursement for reimbursements marked earlier, some of the funds that he received were in excess of the amount that actually an accurate invoice would have requested. So how does that tie in under what the Chief has asked? Well, I think to answer that question, you have to start with what's the definition of a legislative act? And the Supreme Court, and obviously this Court, has been clear that a legislative act can be anything that is done in preparation for or because of some pending legislation or future legislation. Well, it's not some, what if there's an emergency roll call vote and the Senator has to get up in the morning, get dressed, brush his teeth, take a shower, you wouldn't call that legislative action. It's being done in preparation for the roll call vote. You wouldn't call that legislative action. No, unless the vote was about how one gets dressed in the morning, brushes his teeth, takes a shower. But I think in that situation, no. And I think there have been situations of course where the Court has said simply taking a cab or traveling to and from the Capitol if we're using it. All right, so if we relate that inquiry to the facts of this case, you wouldn't maintain, would you, that double billing constitutes a legislative act? I would maintain that we have to look at it a little bit broader. This Court, as recently as last year, has said, obviously, and I'm not challenging this concept of a diaspora of acts, you ask is something legislative, yes or no, and then you ask, obviously, could there be an ambiguous zone? But I think what the government business and what the Court business is that even within that legislative section, there is a diaspora within a diaspora. And case law has made clear that within that lawmaking sphere is not simply voting and giving speeches, those are obviously easy, but also making requests. Well, sure, sure they are. But I mean, you were just referring to the two-step process that was outlined in our recent Menendez decision. So, I mean, you acknowledge then that in the first step, we may be able to look and see that something is clearly in or out as a legislative action. That's correct, I recognize that. Step two recognizes that there may be some ambiguity which requires us to dig further, right? That's what the test says. So, I mean, what's ambiguous about using legislative funds for personal use? What's ambiguous about submitting invoices for work done prior to assuming legislative office, which is sort of checking the queue? Why and which are specifically the allegations within the indictment? It's a small part of the allegations. I think where the Court went wrong is focusing, and where the government goes wrong is focusing on the why, the after effect. I think what we have to look at, what the case law compels us to look at, is what authority do Mr. James have? Now, we're focusing here, obviously, the question is focused on the distribution. But we have to look at the requests. The record is full of his requests for the funding and the reasons why. The record is full. Are you saying that if a request is made, there's so much to a legislator's authority as a legislator, that the Sweetener-Vanquish shows that request for anything? I do. I believe that you have to focus on the machinations of what's happening. And what's happening in the case law is clear. They say the subpoena is covered. But what does that really mean? And in this case, I admit, it does require us to drill down a little deeper on what it actually means. Does your suggestion as to what the law commits here comport with what we say in Lee? Oh, absolutely. I think it does. How? I mean, Lee provides us with an opportunity to look beyond the most purported intentions, right? Only if you get to that ambiguous zone. And I don't believe we get that here. Because what the record establishes is that Senator James was elected, and that Senator James obviously had an interest in the fire burn, and in promulgating legislation related to that. And far from something that he just thought about doing or might do, the record is complete with evidence that he actually did that. That he actually himself proposed bills, and of course, chaired a committee that entertained bills both about the fire burn and about the Centennial Commission, which also included the fire burn component. So we have to mean that any request for, I'll use the term reimbursement, related to the fire burn, a translation of the fire burn transaction, would unmetterly decouple, you're saying, the protections that it brought. I don't. I obviously don't like the word reimbursement, because there is something wrong with it. I don't think there really is. No. I do think this, in Lee, by the way, and I go back to Lee, when Lee was rebanded, there is a sentence when this court sent Lee back that said, look, we have to look at this act. We have to look at, we don't know the ins and outs of what happened in Lee, but there may be a dispute as to whether particular events, conferences, disbursements, or conversations came within the area of the protection. So clearly, Based on the reason for the protection, because Lee also said that these actions they're referring to, the fact-finding, information gathering, investigative activities, according to Lee, are essential prerequisites to the drafting of bills and the enlightened debate over proposed legislation. As such, fact-finding, and it will be added to other things, occupies a position of sufficient importance in the legislative process, focusing on the legislative process, to justify the protection afforded by legislative immunity. And here, Certainly it doesn't give you blanket immunity to do whatever you want as a senator, just because there's some tangential relation. But here, there's not tangential relation. You have Senator James seeking records and asking for the money for those records and receiving a distribution for those records. And the purpose for that distribution, and the authority that he has to ask for that distribution, comes directly from its connection to legislation. That's the focus. If the request had been for an amount which is equal to the appropriate amount that he was entitled for, we have a different scenario. Well, now, obviously the government focuses on the double-billing aspects and what happens after the fact. But their case isn't just about that. Their case is a scheme to defraud that hinges upon the theory that Mr. James lied when he said, I need this money to research bills and to push my legislative agenda. Those two things are unquestionably covered under all the case law that talks about field work, formal and informal document recovery. I respect the government's position that the check itself, in their opinion, is the case. But that's just not the fact. Mr. Hurston, let me, at this point, and before you use up all your time, ask Judge Sirica, if he wishes to ask questions. We have about three minutes left. Thank you, Judge. You can't hear me, am I correct? We can, yes. Well, it's been, you've been, I've tried to ask a couple of questions. Sorry, we did not hear you. No, no, no. I think the problem is with the line. So I just assumed that I could hear you, everything, perfectly. But we must be going in and out on my transmission. My question is this. If we find no legislative acts, do we have to decide anything else in this case? Or is that the end of it? Well, I suppose the government's raised the question of the applicability of the act at all. That would probably be something the court needs to decide. But if you find no legislative acts whatsoever. The applicability to federal prosecution. That's correct. And I'd be happy to address that. But no, I don't think you have to do anything further. I think it's important in this case, though, to focus on the fact that it doesn't matter what happens after the legislative act. It doesn't matter if, in fact, the documents never arrive. Or that you don't pay for the documents. Or that you double bill for the documents. That's not the point. The point is, what are you doing when you ask for them? If you hold a committee hearing on concussions, and you want Tom Brady, or Carson Wentz, I guess is more appropriate. Although, maybe not this week. But you want to bring them to the hearing. Bear in mind, you are addressing a Browns fan. Oh, I'm sorry. There's no one to point to. I'm very sorry. As a public defender, I often feel like a Browns fan. See, I'll say this. When you bring Tom Brady to the hearing, and you have no interest whatsoever in asking questions. You just want an autograph for your granddaughter. That doesn't change the legislative aspect of it. That doesn't change the application of immunity. In this case, just because the government says that Mr. James double billed. Just because the government says that he didn't actually follow through. That doesn't change the fact that making those requests of the document providers. And that internal workings within the legislature of insuring payment for that. That's still covered. And we know that, because the government wants to cut the scaffold away from the legislative act. And say, well, it's not the submission of the receipts. It's not the inner workings. Well, at some point, you cut to the bone. And when we're talking about how subpoenas are covered, and informal fact-finding is covered. That's exactly what we're talking about here. Those communications back and forth that are for a legislative purpose or authorized for a legislative purpose. Define that. Define legislative purpose. That goes back to the Chief's first question. Well, the legislative purpose as defined is anything considered for the passage or rejection of proposed legislation. And in this case, we have tons of proposals. But then if you re-boost her into that, there has to be a better rejection, doesn't there? Well, I see my time is up. I answered your question by answering me. Thank you. Yes, there has to be a stronger connection. But here, there can be no stronger connection than what was elucidated in the grand jury. Which was Mr. James' top legislative advisor saying he was elected and his legislative goals was to pass and debate firearm-related legislation. And of course, to do that, you need to have the facts about the firearm. And that's what he was seeking when he went and sought the funds and sought the documents from the Danish sources. Whether he follows through or not is irrelevant if the power is more than tangential. And I'd argue that here we have something that is clearly within the case law fact-finding. And yes, the government claims that it is illegal in the end that he didn't get the money back. But we're focusing on the wrong aspect of the inquiry. We should be focusing on the front end. Where does the power come from to ask for the documents in the first place? Mr. Herson, you of course have rebuttal, but let me ask Judge McKee if he has any questions. Any more questions at this point? Judge Sirica, any more questions at this point? No, I do not. Thank you. Thanks very much. Thank you. Thank you. We'll have you back on rebuttal. Mr. Shank. Thank you. Good morning. May it please the Court. BJ Shanker for the United States. Your Honor, my colleague faults the government and the district court for, in his words, focusing on the why. But with due respect to my colleague, it's actually Mr. James who has sought both in the district court and here to focus on the why. The government and the district court have appropriately focused on the four corners of the indictment. So what does the government need to prove then under the four corners of the indictment? You've got two counts of wire fraud and one count of total program embezzlement, I think. Right. We need to prove, as we have alleged, that double billing occurred, that billing occurred and invoicing occurred for work that was never done, that billing and invoicing occurred for work that was done before Mr. James became a senator, and that monies received by Mr. James were converted for his personal use. Now, the fact that Mr. James was a senator when this occurred and the fact that the entity that was defrauded was the legislature, as this Court has made clear, do not immunize Mr. James from federal prosecution. And so my colleague mentions in both the briefing and here fact-finding and potential firework legislation. And in his argument, he noted that the government has alleged a scheme to lie to the legislature about the purposes for the seeking of these funds. But if you look at the indictment, that's nowhere in there. The reason Mr. James sought these funds has nothing to do with this basic fraud and theft case, which is what this is. Why wouldn't the reason be germane to weaponize the Legislative Act? I'm sorry, Your Honor. Why wouldn't the reason, the motivation be germane to weaponize the Legislative Act? Well, the government simply doesn't need to prove any legislative acts to make that a case under this indictment here, Your Honor. This was a simple fraud case. The reverse is true. If it is the Legislative Act, then doesn't that implicate immunity of the speech to the people? Well, absolutely. But what are the potential legislative acts here? Well, surely you're not suggesting that your burden of proof would not include excluding these as legislative acts. Your Honor, all we have to prove at trial would be double-billing. And the government has briefly laid out some of the evidence of this. Obviously, we've not gone to trial yet. This is the potential evidence, proposed evidence. Double-billing, invoices that— What we're trying to get at is whether or not the protections of the speech and debate clause are broad enough to protect what really is double-billing. If that double-billing, if the funding, the activity that caused or resulted in the double-billing was a potent legislative act. Well, that's not exactly right, Your Honor, with respect. The reason that that might come into play would only be because Mr. James seeks to present a defense at trial that he sought these funds in order to research potential legislation. But as this Court has said, a defendant's case, a defendant's defense at trial, to the extent it might implicate legislative activity, does not mean that the indictment implicates legislative activity. The government, again, has alleged four broad categories of simple theft or fraud. The fact that they were by a senator and the victim was the legislature does not mean that these were legislative acts. These were simple acts of double-billing. They could have occurred by anybody, quite frankly. In this case, they were committed by a senator. But that doesn't mean these were legislative acts. Let me ask you about the two-step framework of the Menendez case that was referred to earlier in this argument. Does the government suggest that James' actions were inherently non-legislative then or would you say that they were ambiguously legislative? I'm pretty sure I know your answer to that question. Right. Our answer is that all four of these categories of conduct were manifestly non-legislative acts. They were acts of billing the legislature for hidden manners that were fraudulent. Let me return to my question, which you perhaps answered consistent with your understanding of the question or perhaps not. I ask you if you would dispute that it was not part of the government's burden to prove beyond a reasonable doubt that these were not legislative actions. And I would refer you then to Menendez and that two-step framework. Doesn't that impose upon you the burden to demonstrate not merely the transaction that constitutes a bill of billing but something more, that this had no incidence of legislative action to it, that it was non-legislative? Well, what the district court did here, and it's an approach that we largely agree with, was that it determined that the allegations in the indictment and the proof required by the government to establish them at trial are all manifestly non-legislative. It then took at his word, Mr. James' potential defense, that this was related to fact-finding. And it assumed that for purposes of argument and then said, okay, well, suppose that that's ambiguously legislative. Then we're now in the second step of the Menendez two-step process. Now I can look a little bit behind the indictment and look at the proffers by both sides, Mr. James and the government, and determine whether these were indeed related to legislative fact-finding. And what the district court did, and this would be reviewed for clear error, was look at the evidence offered by both sides and see. Let me interrupt you. I know what the district court said. Rather than ask my question a third time, I'll defer to colleagues to pursue the question. I'm not sure that we have any more than we do in response to that. Your Honor, I'm sorry. If I misunderstood your question, I'm happy to. We know what the district court did as a matter of law here. I'm asking you about the government's ultimate burden of proof at this point, if this were true. At trial, the government would not have to disprove that these were legislative acts. Mr. James could present a defense to the jury that he was seeking these funds to engage in fact-finding and further as a proposed legislation. That would not – the question is whether he's immune from prosecution. So if he seeks to raise that defense at trial, that is his choice. The government would not need to disprove that in order to establish guilt at trial. Wasn't that the whole thrust of the motion? It isn't this? Right. But once that's been denied and once we are at trial, if Mr. James seeks to present a defense based on his characterization of legislative activity, this court is making – He doesn't have any burden at all. We don't do that. I know. No, but he chooses to, Your Honor. Obviously, he can choose to present any defense he wants. My point is that his choice of a defense does not mean that this indictment is predicated on legislative activity. I understand. Judge Sirica, do you have questions at this juncture? We're about halfway through the government's time. No, I don't. I have no questions. I'm a little bit puzzled by this last exchange because it does sound as though – and it's kind of moot here because we didn't get that point – but it does sound like you're saying that it is an affirmative defense and your burden of proof to establish the primary case of a criminal case doesn't even have to be cognizant of the fact that there may be an immunity issue here. Your Honor, with respect, I think there are two separate questions here, and only one of them is before the court right now, which was, on a motion to dismiss, was the indictment predicated on that? And his question assumed that. Right. And so he admitted he goes beyond that. Right. So if we proceed to trial and Mr. James seeks to present a defense that some of this was based on legislative activity, if the government sought to introduce any evidence of legislative activity at that point, that would be subject to a motion to suppress and potential suppression by the district court. I don't dispute that. We are not at that stage now. And the government could not, I would agree, present any evidence of legislative activity at trial, and I don't perceive the government having to do that when we get to that point. But that would be a question for the district court at trial. I just want to mention, in case there are any questions, I know Judge Sirica has asked if the court would need to answer any other questions other than whether this is legislative activity. The government maintains its position that the legislative immunity provision in the revised Organic Act does not bar this.  Well, you don't dispute that Congress would have the power to take such a step. Simply, they haven't done so with respect to extending a federal legislative immunity that is coextensive with whatever immunity exists as a matter of territorial law. Sure, it could, Your Honor. Judge Sirica, any questions? No, I had nothing to add to that. I have no further questions. Thank you. Of course the government says that they're not going to use legislative acts because the whole debate here is over what is a legislative act. I think I want to be clear that the case law establishes, and I said it before, that a subpoena, for example, is a legislative act. A request for information, formal or informal, is a legislative act. What I'm asking the court to do is say, well, what does that look like in practice? Is it just the actual subpoena itself that's protected? Or would it be the request to the secretary or assistant to type out the subpoena? Would it be information about where the subpoena is to be served? Would it be the cost associated with serving the subpoena? I submit to the court that all of those would be included under legislative immunity. You look at Eastland. It's a case where the subpoena wasn't even served, but yet they debated the subpoena all the way up to the Supreme Court. And it's not just the document itself that gets the immunity.  So my point is that in this case, Mr. James is entitled to immunity because of the process of requesting documents. And we can dive right into what the government presented to the grand jury. The translation in 2009 where they claimed he took some of the money for himself. That's a great example. That comes in the midst of a debate and a proposal involving firearm legislation. There's no question that's on the floor of the court. You're saying that the amount that he received for that translation is irrelevant? Absolutely. Because the government is focusing on the amount and what he does with the money. But to present their case at trial and to the grand jury, they have to present how he got the money and how he got the documents, which he actually did in that instance receive. That's all protected. They can't try their case without that. They want to say, oh, it's just about what he did with the money. I'm not sure how that comes into play. Let's assume, take this situation, and there's a cost incurred for translation services. And I, as a member of the legislature, put in a request for payment for those legislation purposes. And the translation service, I know, is going to get charged $5,000 for the translation. And I think, you know what? Fine. It was nice. We had a couple more. The decimal point is too close to the comma. But you've got to bump it a few places to the right. So I put in a bill for $5 million. They can't pocket the difference. Well, because there was a translation, and that translation occurred in the course of some legislative activity. He had a legitimate access to it. The fact that I've pocketed all of that money is irrelevant. I don't protect it. Well, your question assumes that your initial request was a legislative act and not just tangential. I'm assuming it is, because I think you're arguing that the issue is. And it's true. I think the answer to your question is yes. And it doesn't mean there can't be repercussions. Because the speech or debate clause of the Virgin Islands Revised Organic Act says you can't be held to answer for that. It doesn't. Anywhere other than the legislature. You may be punished within the legislature. You may be thrown out of the legislature. You may be publicly sworn in. Why would you want to stay in the legislature? You've got to have a next state. This is true. You probably would resign at that point. But I will say that the best evidence that the government abused the Revised Organic Act speech or debate clause of protection is their surprise that it even applied in the first place. Because how can you say that we respected this immunity throughout the presentation of the case to the grand jury when you say it doesn't even apply? They didn't know it applied. And the court found correctly that they violated that when they presented it to the grand jury. And this court should find that dismissal was the appropriate response. Judge McKee, any further questions? I don't have any. Judge Sirica, do you have any further questions? I do not. Very well. Thank you. Thank you to both counsel for your helpful arguments, and the panel will take the matter under review. Thank you very much.